W. J. HAYES, ADMINISTRATOR OF THE ESTATE OF W. J. HAYES, JR., v. CITY OF WILMINGTON, NORTH CAROLINA; TOWLES-CLINE CONSTRUCTION COMPANY; E. B. TOWLES CONSTRUCTION COMPANY, AND S. E. COOPER, TRADING AND DOING BUSINESS AS S. E. COOPER COMPANY; JOHN LINDSEY NEAL AND SEABOARD SURETY COMPANY.

(Filed 29 February, 1956.)

**1. Torts § 6—**

In order for the original defendant to be ·entitled to the joinder of an additional party for the purpose of contribution under G.S. 1-240, the cross complaint must allege facts so related to the subject matter declared on in plaintiff's complaint as to disclose that plaintiff, had he desired to do so, could have joined the additional party as a defendant, and that such additional party is liable to plaintiff, along with the original defendant, as a joint tortfeasor.

**2. Same—**

The original defendant may file answer denying negligence, and alleging negligence of other defendants as a sole proximate cause, and also alleging conditionally or in the alternative, for the purpose of the joinder of a third party for contribution, that if defendant were negligent, such third party also was negligent, and that the negligence of such third party concurred in causing the injury in suit, since a defendant who elects to plead a joint tortfeasor into his case is not required to surrender other defenses available to him.

**3. Same—**

When an alleged joint tortfeasor is brought into a case as an additional party defendant, and it turns out that no cause of action is stated against him, either in the main action or in a cross-action pleaded by another

525

defendant, he is an unnecessary party to the action and, on motion, may have his name stricken from the record as mere surplusage.

**4. Same: Pleadings § 31—**

The motion of an additional party to have his name stricken from the pleadings on the ground that no cause of action was stated against him either in the main action or in the original defendant's cross-action operates, for all practical purposes, as a demurrer challenging the legal sufficiency of the challenged pleadings to state facts sufficient to constitute a cause of action against him.

**5. Appeal and Error § 51a—**

Decision on a former appeal is the law of the case upon the questions therein presented and decided, both in subsequent proceedings in the trial court and on subsequent appeal upon the same facts.

**6. Same—**

The doctrine of the law of the case applies only to such points as are actually presented and necessarily involved in determining the case, and while the doctrine applies to every point presented and decided even though any one of such points is sufficient to support the decision, the doctrine does not apply to points which are not actually presented and necessarily involved in determining the case and which are therefore *obiter dicta.*

**7. Same—**

The doctrine of the law of the case is basically a rule of procedure rather than of substantive law, and in determining the correct application of the rule, the record on former appeal may be examined for the purpose of ascertaining what facts and questions were before the Court, particularly when the case is still in the interlocutory stage and nothing has been done that can prejudice either of the parties.

**8. Torts § 6: Pleadings § 31—**

Where an additional defendant joined for contribution on the cross complaint of the original defendant moves to have his name stricken from the pleadings on the ground that the cross complaint fails to state facts sufficient to constitute a cause of action against him, the motion for practical purposes is a demurrer, presenting the sole question of the sufficiency of the cross complaint·to state a cause of action against him, and in determining the question, the allegations of the complaint should not be considered, and certainly it should not be assumed that they will be proven at the trial.

**9. Appeal and Error § 51a—On appeal from granting motion to strike cross complaint, conclusions predicated on other pleadings are obiter.**

On appeal from the granting of the motion of additional parties, joined for the purpose of contribution, to strike their names from the pleadings on the ground that the original defendant's cross complaint did not allege facts sufficient to state a cause of action against them for contribution, decision upholding the granting of the motion on the ground that the cross complaint failed to allege joint tortfeasorship is the law of the case upon the pleadings as then constituted, but statements in the decision to the

effect that the motion was also properly allowed on the ground that it appeared from the allegations of the complaint that the negligence of the original defendant was primary and also that the negligence of the original defendant insulated any negligence of the additional defendants, relate to matters not presented by the record for decision in determining the correctness of the order, and therefore are *obiter dicta* and not a part of the law of the case.

**10. Appeal and Error § 1—**

An appeal presents the question whether the ruling or judgment of the court below is correct and not whether the reason given therefor by the lower court or the ground on which it professed to base the ruling or judgment is sound or tenable.

**11. Appeal and Error § 51a—**

Where an order of the Superior Court recites matters not presented for decision as a basis for its order, and on appeal such matters extrinsic to the decision are also discussed, the conclusions in the decision are *obiter* nonetheless because they derive from unfounded reasons given by the lower court for its decision.

**12. Torts §§ 4, 6—Allegations held sufficient to state cause of action for contribution against additional defendants.**

This action was instituted to recover for the death of intestate who was killed in an explosion caused by the ignition of gas which had seeped into the house. The gas escaped from a connection at the meter which was jarred loose when an excavator struck the gas pipe leading from the street to the house. Plaintiff sued the city, the street contractors and the subcontractor doing the preliminary excavating work, alleging that defendants knew or should have known of the location of the pipes in the area of the work, that the grader struck the pipe with such force as to make it evident that the pipe had been dislocated in the house, but that the employees of the subcontractor, after examining the exposed pipe, continued the grading operations instead of taking prompt safety precautions. The subcontractor filed a cross-action for contribution against the gas company alleging that the gas company was negligent in that it failed to place a vent on the governor at the meter, that it installed the service pipe under the house without supporting it to joists or anchoring it at the meter, that the pipe was buried too shallow for safety in violation of municipal regulations, that it failed to lower the service pipes after having been notified that the grading and excavating on said street was about to commence, and that it should have foreseen that unless the pipes were lowered an explosion was likely to occur in the way and manner in which it did actually occur. The cross complaint further alleged that if defendant were negligent, the negligence of the gas company concurred in causing the explosion and resultant death of intestate. *Held:* The cross complaint states a cause of action against the gas company for contribution, and does not state facts attracting as a matter of law the doctrine of insulated negligence or the doctrine of primary and secondary liability.

**13. Pleadings § 7—**

A defendant may set up and rely upon contradictory defenses.

**14. Negligence § 7—**

In order for the negligence of one wrongdoer to insulate the negligence of another, it must break the chain of causation set in motion by the original wrongdoer and become itself solely responsible for the injuries, and be an independent force which turns aside the natural sequence of events set in motion by the original wrongdoer and produce a result which otherwise would not have occurred, and which reasonably could not have been anticipated.

**15. Negligence § 8—**

The doctrine of primary and secondary liability as applied in tort cases is a branch of the law of indemnity, and the doctrine is not applicable when the person against whom indemnity is sought breaches substantially equal duties owed to the injured person, since if both are *in pari delicto*, neither will be required to relieve the other of the entire loss.

PARKER and BOBBITT, JJ., concur in result.
BARNHILL, C. J., dissenting.

APPEAL by defendants, S. E. Cooper, John Lindsey Neal, Towles-Cline Construction Company, and E. B. Towles Construction Company, from *Stevens, J.,* at December Civil Term, 1954, of NEW HANOVER.

Civil action for the alleged wrongful death of plaintiff's intestate, heard below on motion of Tide Water Power Company and Carolina Power & Light Company to strike their names as defendants.

This case was here on former appeal. It was heard and determined at the Fall Term, 1953. The facts disclosed on former appeal may be summarized as follows:

On 31 December, 1951, there was a gas explosion in Wilmington, North Carolina, which demolished the residence of W. J. Hayes on Barnard Drive and killed his intestate son, W. J. Hayes, Jr. Out of this incident the cause of action here sued on arose, along with some thirty companion cases. The plaintiff originally joined as defendants the City of Wilmington, Towles-Cline Construction Company, E. B. Towles Construction Company, and S. E. Cooper. The complaint alleges in substance: (1) that the City of Wilmington contracted with Towles-Cline Construction Company to grade and pave Barnard Drive between Chestnut and Market Streets; (2) that Towles-Cline Construction Company transferred or set over to E. B. Towles Construction Company all or certain portions of the work to be performed under the contract; (3) that the construction companies contracted with the defendant Cooper to do the preliminary excavating and grading; (4) that on 31 December, 1951, at about 7:30 a.m., the defendant Cooper, acting through his employees, and under the direction of the other defendants in accordance with specifications furnished by the City of Wilmington, began grading Barnard Drive with a diesel grader. After

three or four cuts were made, the blade of the grader struck a gas pipe leading to the home of W. J. Hayes and family located on the west side of the street; "that the blade of the grader struck the pipe with such force as to bend the . . . pipe at the point of impact and rip the gas line from its connection at the gas meter under the . . . corner of the Hayes home, . . . leaving an open gas service line and causing highly volatile . . . commercial gas to pour into the confined area beneath the Hayes home; that the driver and the foreman present examined . . . the exposed and bent section of pipe, but . . . instead of taking prompt safety precautions, the foreman ordered the driver of the grading machine to continue grading, which he did; that the . . . operator continued grading for a considerable distance southwardly on Barnard Drive until the grader struck another pipe, whereupon the operator and the foreman . . . examined . . . the exposed section of the second pipe . . .; that approximately one-half hour after the Hayes gas service pipe was stuck, the . . . Hayes home . . . was completely demolished in a devastating explosion, the proximate . . . result of the . . . accumulation of . . . gas cause . . . by the negligent acts of the defendants in breaking . . . the Hayes service pipe . . .;" (5) that the defendants knew or should have known the location of the gas pipes within the area of the work; that they knew or should have known, from the appearance and condition of the Hayes gas service pipe after it was struck and dislocated that it was loose at the meter and was emptying highly explosive gas beneath the Hayes home, thus creating a deadly danger to the Hayes family and to all inhabitants of the area; (6) that the defendants were negligent, in that: (a) they failed to take reasonable steps to determine the location of the gas pipe or its distance below the surface of the ground and failed to furnish information in respect thereto to those actually engaged in the grading operation, in order to prevent striking the pipe; (b) they failed to halt grading operations after striking the Hayes service pipe, but continued operations without investigating or reporting the damage done; (c) they failed to give warning or notice to the residents of the area or to those in charge of the distribution of gas of the dangerous situation created by the breaking of the gas pipe, to avoid injury to persons and property in the vicinity; (7) that "as a result of the joint and concurring negligence of the defendants as . . . alleged, the plaintiff's intestate . . . was . . . fatally injured. . . ."

At the time of the explosion, gas for cooking, heating, and other purposes was furnished the citizens of Wilmington by the Tide Water Power Company, and it was one of its underground pipes leading from the street to the Hayes home that was hit by the defendant Cooper's grading machine. Since the explosion, the Tide Water Power Company

has merged with and been absorbed by the Carolina Power & Light Company.

For convenience, the two power companies will be referred to hereinafter at times as the power company.

The defendant Cooper, answering, denied the material allegations of the complaint, and by further defense alleged negligence on the part of the City of Wilmington and of Towles-Cline Construction Company (1) as "the sole proximate cause" of the explosion, and (2), by way of alternate defense, as entitling Cooper to indemnity over against the city and the construction company under application of the doctrine of primary and secondary liability. The details of these defenses are omitted as not being pertinent to decision.

The defendant Cooper's original answer also contains a section captioned, "Further Defense and Cross-action" against the power company. These in gist are the allegations made against the power company:

1. That the Tide Water Power Company owned all the gas pipes, lines and fittings in the vicinity of the W. J. Hayes home including "the service pipe, meter, governor and fittings up to and including the point where the service line . . . attached to a connection on the right-hand outlet side of the meter; . . . that the pressure on the line . . . was high pressure and the gas . . . served was . . . highly explosive; . . . that a governor was placed on the . . . meter to reduce the pressure before going into the service pipe leading from the meter to the fixtures, and that when a higher pressure than that which the governor is set for comes into the line the mercury would be blown from the governor and permit the gas to escape under the said building"; that the power company failed and neglected to place a vent on the governor to keep the gas from being released underneath the house if the governor should fail to operate; that the power company installed the service line from the street to the Hayes house in a shallow trench, at an unsafe depth of about 12 inches, and at the curb line, or point of impact, only about 9 inches; that under the house the line was exposed, "having a fall from the meter to the main gas line."

2. ". . . that the gas service pipe was not anchored at the meter, but was merely attached to the same with one-half-inch fittings, which the said Tide Water Power Company knew, or should have known, was not proper installation, nor was the . . . service gas line supported to joists or other fastenings to the house so that the . . . pipe could not be easily moved."

3. ". . . that the Tide Water Power Company had notice that Barnard Drive in the City of Wilmington was to be paved, and that

the . . . Tide Water Power Company would have to lower their lines to a depth to insure safety."

4. That the power company was negligent in that (a) it failed to install and maintain the service gas pipe at a depth and in such manner as to insure the safety of persons or property; (b) it failed to install properly and fasten the service gas line under the Hayes residence in such manner as to prevent injury or damage to persons and property; (c) it failed to lower the service gas pipes on Barnard Drive to a depth below the grade to be cut after having been notified that grading and excavating on said street was about to commence.

5. ". . . that the negligent acts of the . . . Tide Water Power Company . . . as hereinbefore set forth, or one or more, or all of said acts, were the sole, direct and proximate cause, or one or more of the sole proximate causes of the injuries to and death of W. J. Hayes, Jr., deceased, as referred to in the complaint, and as in this answer set forth."

6. ". . . that by reason of the matters and things alleged in this further defense and cross-action,. . . the Tide Water Power Company and its successor, the Carolina Power & Light Company, are proper and necessary parties to this action, . . ."

By *ex parte* order of the court, Tide Water Power Company and its successor, by merger, Carolina Power & Light Company, were made defendants. Carolina Power & Light Company, for itself and as successor to the Tide Water Power Company, moved the court to strike its name and that of Tide Water Power Company as parties defendant, on the ground that the cross complaint of Cooper did not state facts sufficient to constitute a cause of action against either of them and did not show that the power company was a necessary party to the action. This motion was heard at the February Term, 1953, of the Superior Court of New Hanover County. The motion was allowed and the name of the power company was ordered stricken from the record. From this order the defendant Cooper appealed. The appeal was heard at the Fall Term, 1953. Our decision, reported in 239 N.C. 238, 79 SE 2d 792, affirmed the order of the Superior Court.

When the case went back to the trial court, John Lindsey Neal, operator of. Cooper's motor grader, was made a party defendant on motion of the plaintiff.

Thereafter, the defendant Cooper under leave of court filed an amended answer, in which John Lindsey Neal joined. The first part of the amended answer, like Cooper's original answer, is devoted to a paragraph-by-paragraph denial of the material allegations of the complaint. Then follows a 26-paragraph section which is captioned, "Further Defense and Cross-action, under Section 1-240, General Statutes of

North Carolina, Against" the power company and the City of Wilmington. The first 17 paragraphs of this section contains a plea over against Cooper's original co-defendants, City of Wilmington, Towles-Cline Construction Company, and E. B. Towles Construction Company, in which Cooper and Neal allege that if they be found negligent, then and in that event, the negligence of the city and the construction companies was primary and theirs secondary only. The amended plea of Cooper and Neal over against the original co-defendants is substantially the same as was made by Cooper in that portion of his original answer designated as "Further Defense," except it is not alleged in the amended pleading that the negligence of the city and the construction companies was the "sole, direct and proximate cause" of the intestate's death. Instead, the amended plea is for indemnity or contribution, as the facts may disclose.

In paragraphs 18 to 25, inclusive, of the amended "Further Defense," the defendants Cooper and Neal plead over against the power company and the City of Wilmington for contribution under the joint tortfeasorship statute. In this section of the amended pleading, Cooper and Neal bring forward in substance the allegations of negligence contained in Cooper's original "Further Defense and Cross-action" against the power company, which on former appeal were held insufficient to state a cause of action for contribution under the joint tortfeasorship statute. Also, it is noted that the amended cross complaint contains allegations which (1) amplify and make more definite and certain several elements of negligence originally alleged against the power company, (2) charge new elements of negligence against the power company, and (3) allege joint tortfeasorship, with demand for contribution, against the power company and the City of Wilmington based on specific averments of negligence set out in the amended cross complaint.

Under leave of court, the two construction companies, Towles-Cline Construction Company and E. B. Towles Construction Company, also filed amended answers, each containing a plea over against the power company and the City of Wilmington for contribution, based on substantially the same allegations contained in the amended plea filed by the defendants Cooper and Neal.

Thereafter, at the April Term, 1954, by order entered "without prejudice to the rights" of the power company, it was brought back into the case as a defendant. Again, the power company appeared and moved to strike its name as a defendant from the record, assigning as grounds: (1) that each cross complaint fails to state facts sufficient to constitute a cause of action against the power company for contribution as a joint tortfeasor; (2) that the cross complaints state no facts which show that the power company is a necessary or proper party to the action;

and (3) that the adjudication on the former appeal bars maintenance of the cross-actions, on the theory that the former decision established the law of the case. The motion, heard at the December Civil Term, 1954, of the Superior Court of New Hanover County, was allowed and the name of the power company again was ordered stricken from the record. The defendants against whom the ruling was made, namely: (1) Cooper and Neal, (2) Towles-Cline Construction Company, and (3) E. B. Towles Construction Company, appealed to this Court. The appeal was heard on regular call of the docket at the Spring Term, 1955. However, the Court, on its own motion under Rule 31, directed a reargument. The case was reheard on call of the Fourteenth and Seventeenth Districts at the Fall Term, 1955.

*McClelland & Burney, McLean & Stacy, and R. M. Kermon for defendants Cooper and Neal, appellants.*

*R. L. Savage and James & James for Towles-Cline Construction Company and E. B. Towles Construction Company, appellants.*

*Hogue & Hogue and A. Y. Arledge for Carolina Power & Light Company, appellee.*

JOHNSON, J. Decision here turns on whether the amended cross complaint filed by the defendants Cooper and Neal states facts sufficient to constitute a cause of action for contribution against the power company. In determining this question, these principles of law established by our decisions come into focus:

1. Liability for contribution under the provisions of G.S. 1-240 may not be invoked except among *joint* tortfeasors. Therefore, in order for one defendant to join another as a third-party defendant for the purpose of contribution, he must allege facts sufficient to show *joint* tortfeasorship and his right to contribution in the event plaintiff recovers against him. *Hayes v. Wilmington,* 239 N.C. 238, 79 S.E. 2d 792.

2. In order to show *joint* tortfeasorship, it is necessary that the facts alleged in the cross complaint be sufficient to make the third party liable to the plaintiff along with the cross-complaining defendant in the event of a recovery by the plaintiff against him. *Hunsucker v. Chair Co.,* 237 N.C. 559, 75 S.E. 2d 768. Also, the allegations of the cross complaint must be so related to the subject matter declared on in the plaintiff's complaint as to disclose that the plaintiff, had he desired to do so, could have joined the third party as a defendant in the action. *Hobbs v. Goodman,* 240 N.C. 192, 81 S.E. 2d 413; *s. c.,* 241 N.C. 297, 84 S.E. 2d 904. However, it is established by our decision that when a defendant in a negligent injury action files answer denying negligence but alleging, conditionally or in the alternative, that if he were negli-

gent, a third party also was negligent and that the negligence of such third party concurred in causing the injury in suit, the defendant is entitled, on demand for relief by way of contribution, to have such third person joined as a co-defendant under the statute, G.S. 1-240. *Freeman v. Thompson*, 216 N.C. 484, 5 S.E. 2d 434; *Lackey v. Sou. Ry. Co.*, 219 N.C. 195, 13 S.E. 2d 234; *Wilson v. Massagee*, 224 N.C. 705, 32 S.E. 2d 335.

3. When an alleged joint tortfeasor is brought into a case as an additional party defendant, and it turns out that no cause of action is stated against him, either in the main action or in a cross-action pleaded by another defendant, he is an unnecessary party to the action and, on motion, may have his name stricken from the record as mere surplusage. *Fleming v. Light Co.*, 229 N.C. 397, 50 S.E. 2d 45; *Winders v. Southerland*, 174 N.C. 235, 93 S.E. 726. For all practical purposes, the motion to strike operates as a demurrer and tests the legal sufficiency of the challenged pleading to state facts sufficient to constitute a cause of action against the additional party defendant. *Bank v. Gahagan*, 210 N.C. 464, 187 S.E. 580.

The former appeal in this case was from an order allowing the motion of the power company to strike its name from the record on the ground that Cooper's cross complaint failed to state a cause of action against the power company for contribution. We affirmed the order of the lower court. It is to be noted, however, that the cross complaint did not fail because of lack of allegations of negligence against the power company. Indeed, the defective cross complaint contained plenary allegations of negligence against the power company. The fatal defect arose out of the manner in which Cooper dealt with the crucial element of proximate cause—his failure to allege joint tortfeasorship between himself and the power company. He alleged that the negligence of the power company was the sole proximate cause of the explosion. This allegation, positively made by Cooper, was never modified or varied by conditional averment or alternative plea to the effect that if the court should find him actionably negligent, then and in that event, the negligence of the power company concurred with his own negligence in causing the explosion and resultant death of the intestate. The result was that Cooper's original cross complaint failed to allege joint tortfeasorship—the prime essential to the statement of a cause of action for contribution under G.S. 1-240. The opinion on former appeal takes cognizance of the three elements of negligence alleged against the power company, and then points out that "Nowhere is it alleged that the negligence of the power company concurred with the negligence of Cooper in causing the death of the intestate. Instead, he alleges that the negligence of the power company was the sole proxi-

mate cause of . . . injury and death." (239 N.C. mid. p. 243, 79 S.E. 2d, top p. 796). Thus, for want of allegations showing concurrent negligence of Cooper and the power.company, Cooper's first cross complaint came to naught. The decision on former appeal was rested on this omission.

However, the power company now contends that the former decision rests on a broader base. It is urged that the former decision decided in part that Cooper's first cross complaint affirmatively disclosed negligence on his part which (1) intervened as an outside agency and completely insulated the negligence, if any, of the power company, or (2) at least invoked the doctrine of primary and secondary liability as between Cooper and the power company and exposed Cooper to primary liability. In support of these contentions, the power company relies on the following statements appearing in the opinion immediately after the pronouncement that Cooper's cross complaint failed to allege concurrent negligence on the part of Cooper and the power company:

"If we concede that Cooper has sufficiently alleged negligence on the part of the power company and that plaintiff will prove the acts of negligence he alleges against Cooper (which Cooper does not even conditionally concede in his cross complaint), it is made to appear that the acts of Cooper were the acts of an 'outside agency or responsible third person' which completely insulated the negligence, if any, of the power company (citing authorities).

"The negligence, if any, of the power company was passive; that of defendant was active. Without the negligence of Cooper, the negligence of the power company would have caused no harm. The intervening acts of Cooper did not merely operate as a condition on or through which the negligence of the power company operated to produce the injury and deaths of plaintiff's intestates, or merely accelerate or divert the negligence of the power company. It broke the line of causation, . . . so that it cannot be said that the power company could have reasonably foreseen the negligence of Cooper or that the two are joint tort-feasors.

"Moreover, the acts of negligence of the power company alleged by Cooper, when related to the negligence alleged by plaintiff, at least invokes the doctrine of primary and secondary liability, Cooper being the one primarily liable. And it is axiomatic that one who is primarily liable cannot recover over against one who is secondarily liable."

The power company points to the foregoing expressions and contends that the conclusions therein stated are part of the law of the case. The contention is supported by the further argument that since the amended cross complaint brings forward the same aspects of negligence which were alleged against the power company in Cooper's original cross

complaint, it logically follows that the conclusions stated in the opinion of the Court on former appeal in respect to intervening negligence and primary liability bar maintenance of the new cross-action under application of the doctrine of the law of the case. The appellants, on the other hand, contend (1) that the original cross complaint filed by Cooper does not disclose that his negligence intervened and insulated, or relegated to a position of secondary liability, the negligence of the power company, and (2) that the conclusions to the contrary expressed in the opinion on former appeal are *obiter dicta* and therefore are not precedents in the sense of settling the law of the case.

As bearing on these contentions, it may be conceded that as a general rule when an appellate court passes on a question and remands the cause for further proceedings, the questions there settled become the law of the case, both in subsequent proceedings in the trial court and on subsequent appeal, provided the same facts and the same questions which were determined in the previous appeal are involved in the second appeal. *Penny v. R. R.,* 161 N.C. 523, 77 S.E. 774; *McGraw v. R. R.,* 209 N.C. 432, 184 S.E. 31; *Robinson v. McAlhaney,* 216 N.C. 674, 6 S.E. 2d 517; *Templeton v. Kelley,* 216 N.C. 487, 5 S.E. 2d 555; *Wall v. Asheville,* 220 N.C. 38, 16 S.E. 2d 397; *Pinnix v. Griffin,* 221 N.C. 348, 20 S.E. 2d 366; *Bruce v. O'Neal Flying Service,* 234 N.C. 79, 66 SE 2d 312; 3 Am. Jur., Appeal and Error, Sec. 985.

However, the doctrine of the law of the case contemplates only such points as are actually presented and necessarily involved in determining the case. The doctrine does not apply to what is said by the reviewing court, or by the writing justice, on points arising outside of the case and not embodied in the determination made by the court. Such expressions are *obiter dicta* and ordinarily do not become precedents in the sense of settling the law of the case. See: *Griffith v. Griffith,* 240 N.C. 271, 279, 81 S.E. 2d 918, 924; *Moose v. Com'rs.,* 172 N.C. 419, pp. 433 and 434, 90 S.E. 441, 448; *Rodwell v. Rowland,* 137 N.C. 617, at pp. 638 and 640, 50 S.E. 319, 327; *Barney v. Winona & St. P. R. Co.,* 117 U.S. 228, 29 L. Ed. 858, 6 S. Ct. 654; *Re Norton,* 177 Ore. 342, 162 P. 2d 379, 161 A.L.R. 439; *Chicago, S. F. & C. R. Co. v. Swan,* 120 Mo. 30; *Jesse v. Cater,* 28 Ala. 475; *Wilson v. Devine,* 80 Cal. 385; 3 Am. Jur., Appeal and Error, Sec. 996; 14 Am. Jur., Courts, Sec. 83; 5 C.J.S., Appeal and Error, Sec. 1964.

"In every case what is actually decided is the law applicable to the particular facts; all other legal conclusions therein are but *obiter dicta.*" *Hill v. Houpt,* 292 Pa. 339, 141 A. 159, 160.

On the subject of *obiter dicta,* we find this statement in Black, Law of Judicial Precedents, at page 173: ". . . if the statement in the opinion was . . . superfluous and not needed for the full determination

of the case, it is not entitled to be accounted a precedent, for the reason that it was, so to speak, rendered without jurisdiction or at least extra-judicial. Official character attaches only to those utterances of a court which bear directly upon the specific and limited questions which are presented to it for solution in the proper course of judicial proceedings. Over and above what is needed for the solution of these questions, its deliverances are unofficial."

True, where a case actually presents two or more points, any one of which is sufficient to support decision, but the reviewing Court decides all the points, the decision becomes a precedent in respect to every point decided, and the opinion expressed on each point becomes a part of the law of the case on subsequent trial and appeal. In short, a point actually presented and expressly decided does not lose its value as a precedent in settling the law of the case because decision may have been rested on some other ground. 21 C.J.S., Courts, Sec. 190, p. 314.

The rule that a decision of an appellate court is ordinarily the law of the case, binding in subsequent proceedings, is basically a rule of procedure rather than of substantive law, and must be applied to the needs of justice with a flexible, discriminating exercise of judicial power. *Reamer's Estate*, 331 Pa. 117, 200 A. 35, 119 A.L.R. 589; 3 Am. Jur., Appeal and Error, Sec. 985 (Supp.). Therefore, in determining the correct application of the rule, the record on former appeal may be examined and looked into for the purpose of ascertaining what facts and questions were before the Court. *Alerding v. Allison,* 170 Ind. 252, 83 N.E. 1006; 3 Am. Jur., Appeal and Error, Sec. 985. Moreover, "An appellate court may on second appeal, correct an entry in the former judgment so as to make it express the true decision of the case." 3 Am. Jur., Appeal and Error, Sec. 986. Particularly is this so where, as here, the case is still in the interlocutory stage and nothing has been done that can prejudice either of the parties. *Durham v. Eno Cotton Mills,* 144 N.C. 705, 57 S.E. 465.

Thus we come to consider the crucial question: Does Cooper's original cross complaint allege negligence on his part which as a matter of law (1) intervened and insulated the negligence, if any, of the power company, or (2) invoked the doctrine of primary and secondary liability as between Cooper and the power company and fixed Cooper with primary liability? If such negligence, in either or both aspects, on the part of Cooper is disclosed by the facts alleged in the original cross complaint, then the conclusion to that effect expressed in the opinion on former appeal must be treated as the law of the case in respect to the aspect or aspects of such negligence as may be so disclosed. On the other hand, if the challenged conclusions be unsupported by the facts

alleged in the original cross complaint, they will be treated as *dicta* only.

An examination of the record on former appeal discloses that Cooper nowhere in his original answer or cross complaint admits or alleges negligence of any sort on his part. He denies all the allegations of negligence made against him by the plaintiff. Whereas all the allegations of negligence contained in his cross complaint are asserted against the power company as the sole proximate cause of the explosion. All this is stated in the opinion on former appeal. What, then, is the factual basis for the conclusions therein expressed to the effect that Cooper is fixed with negligence which (1) intervened and insulated the negligence, if any, of the power company, or (2) at least relegated the power company's negligence to a position of secondary liability? The challenged conclusions, as stated in the opinion, are based on the assumption "that plaintiff will prove the acts of negligence he alleges against Cooper, . . ." It thus appears that the premise upon which the challenged conclusions rest is based upon facts appearing in the plaintiff's complaint against Cooper, rather than in Cooper's cross complaint against the power company. This being so, the premise must be rejected as being based on facts not presented by or involved in the appeal. The single question before the Court was whether Cooper's cross complaint alleged facts sufficient to state a cause of action for contribution. In making this determination, the Court could not borrow from the allegations of the complaint or assume that the allegations thereof would be proved against him. The question whether Cooper was negligent was determinable wholly and solely on the basis of the allegations of his original cross complaint. The power company's motion to strike, used as a demurrer, tested only the sufficiency of the allegations of the cross complaint. It is elemental that a demurrer may not call to its aid facts not appearing on the face of the challenged pleading. *Trust Co. v. Wilson,* 182 N.C. 166, 108 S.E. 500; *Wood v. Kincaid,* 144 N.C. 393, 53 S.E. 4; *Davison v. Gregory,* 132 N.C. 389, 43 S.E. 916. *A fortiorari,* decision on demurrer may not be resolved on the basis of an assumption that the ultimate proofs will be different from those alleged.

It necessarily follows from what we have said that the challenged conclusions derive from sources outside the scope of decision and relate to questions not presented for decision. Therefore, they will be treated as *obiter dicta* and disregarded as settling the law of the case.

We have not overlooked the fact that while the power company in its motion to strike did not assign as ground therefor the application of either the doctrine of intervening negligence or that of primary and secondary liability, nevertheless, the order entered by the presiding

judge allowing the motion recites that he was of the opinion that the doctrine of intervening negligence applied and precluded Cooper from recovering over against the power company. And conceding, as we may, that the presiding judge's controlling reason for allowing the motion was his belief that the doctrine of intervening negligence applied, even so, his reason as so assigned, arising as it did outside the scope of the motion and being wholly unsupported by the facts alleged in the cross complaint then under test, was immaterial to decision on appeal. When the case reached this Court, the question for review and decision was whether the ruling of the court below was correct, and not whether the reason given therefor or the ground on which it professed to be based is sound or tenable. 5 C.J.S., Appeal and Error, Sec. 1464. See also *Bell v. Cunningham,* 81 N.C. 83; *Hughes v. Mc-Nider,* 90 N.C. 248; *Alabama Public Service Com. v. Mobile Gas Co.,* 213 Ala. 50, 104 So. 538, 41 A.L.R. 872; *Collier v. Stamatis,* 63 Ariz. 285, 162 P. 125; *Duckwell v. Gregg's Adm'r,* 297 Ky. 730, 181 S.W. 2d 263; *Brown v. Allen,* 344 U.S. 443, 97 L. Ed. 469, 73 S. Ct. 397.

Manifestly, the challenged conclusions appearing in the opinion on former appeal relate to questions not presented by the record for decision. The conclusions are *obiter* nonetheless because they derive from unfounded reasons given by the lower court for its decision. In this sense, the challenged conclusions are not only *dicta* but double *dicta.*

We have given due consideration to the appellee's citations of authorities and argument relating to the principles governing *res judicata* and *stare decisis.* On this record, these principles may not be called to the appellee's aid. The authorities cited are factually distinguishable.

We now return to the main question for decision, which is: Do Cooper and Neal in their amended cross complaint state facts sufficient to constitute a cause of action for contribution against the power company? The amended pleading brings forward and amplifies the allegations of negligence contained in the original cross complaint. It states facts sufficient to charge the power company with negligence in several particulars. The acts and omissions of negligence as charged against the power company are alleged to have concurred with any negligence chargeable against Cooper and Neal in causing the explosion and resultant death of the intestate, and due demand is made for contribution. In short, the amended pleading closes all the hiatuses which rendered the first pleading fatally defective. All the essentials requisite to the statement of a cause of action for contribution have been met.

True, the allegations to the effect that the negligence of the power company concurred with the negligence of Cooper and Neal are made in the alternative, expressly conditioned upon actionable negligence

being found against them.  However, we think such conditional plea
of concurrent negligence is sufficient to enable Cooper and Neal to
invoke the right of contribution under the statute, G.S. 1-240.  There
is no merit in the power company's contention that the conditional
plea of joint and concurrent negligence as made by Cooper and Neal
is a mere conclusion of the pleader to be disregarded.  The form of the
plea as made has the sanction of the Court.  See *Freeman v. Thompson,
supra* (216 N.C. 484) ; *Lackey v. Sou. Ry. Co., supra* (219 N.C. 195) ;
*Mangum v. Sou. Ry. Co.,* 210 N.C. 134, 137, 185 S.E. 644.

Nor is there any merit in appellee's further contention that the con-
ditional plea of concurrent negligence made by Cooper and Neal is
destroyed by their positive denials of negligence and by their allega-
tions of negligence over against other defendants asserted in other
portions of their amended answer.  As to this contention, it is enough
to say that a defendant who elects to plead a joint tortfeasor into his
case is not required to surrender other defenses available to him.  Nor
may an additional party defendant who is brought in as a joint tort-
feasor on cross complaint of an original defendant escape the plea
against him by borrowing from contradictory allegations made by the
cross-complaining defendant by way of defense against the plaintiff
or by way of separate pleas over against other defendants.  It is ele-
mental that a defendant may set up and rely upon contradictory
defenses.  *Freeman v. Thompson, supra.*

Moreover, the amended cross complaint is free of allegations imply-
ing negligence as a matter of law on the part of Cooper and Neal
which intervened and insulated the negligence, if any, of the power
company.

The doctrine of intervening negligence is well established in our law.
Its essential elements and governing principles are well defined and
elaborately explained in former decisions of this Court.  Further elab-
oration here is unnecessary.  *Balcum v. Johnson,* 177 N.C. 213, 98 S.E.
532; *Kiser v. Carolina Power & Light Co.,* 216 N.C. 698, 6 S.E. 2d 713;
*Beaver v. China Grove,* 222 N.C. 234, 22 S.E. 2d 434; *Riggs v. Motor
Lines,* 233 N.C. 160, 63 S.E. 2d 197; *Hall v. Coble Dairies,* 234 N.C.
206, 67 S.E. 2d 63; *Reynolds v. Murph,* 241 N.C. 60, 84 S.E. 2d 273;
*Tillman v. Bellamy,* 242 N.C. 201, 87 S.E. 2d 253.  These decisions
emphasize the principle that an intervening cause which will relieve
the original wrongdoer of liability must be a new cause intervening
between the original negligent act or omission and the injury ultimately
suffered, which breaks the chain of causation set in motion by the
original wrongdoer and becomes itself solely responsible for the injuries.
It must be an independent force which turns aside the natural sequence
of events set in motion by the original wrongdoer "and produces a

result which would not otherwise have followed, *and which could not have been reasonably anticipated."* (Italics added.) *Hall v. Coble Dairies, supra* (234 N.C. at p. 211, 67 S.E. 2d at p. 67).

It is immaterial how many new events or forces have been introduced if the original cause remains operative and in force. In order for the conduct of the intervening agent to break the sequence of events and stay the operative force of the negligence of the original wrongdoer, *the intervening conduct must be of such nature and kind that the original wrongdoer had no reasonable ground to anticipate it. Balcum v. Johnson, supra.* (Italics added.)

"The test by which the negligent conduct of one is to be insulated as a matter of law by the independent negligent act of another, *is reasonable unforeseeability on the part of the original actor of the subsequent intervening act and resultant injury."* (Italics added.) *Butner v. Spease,* 217 N.C. 82, 6 S.E. 2d 808. See also *Beach v. Patton,* 208 N.C. 134, 179 S.E. 882.

In 38 Am. Jur., Negligence, Sec. 67, pp. 722 and 723, the principle is stated this way: "In order to be effective as a cause superseding prior negligence, the new, independent, intervening cause must be one not produced by the wrongful act or omission, but independent of it, and adequate to bring about the injurious result a cause which interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, *and produces a different result, that reasonably might not have been anticipated."* (Italics added.)

"If the intervening cause is in reality only a condition on or through which the negligence of the defendant operates to produce an injurious result, it does not break the line of causation so as to relieve the original wrongdoer from responsibility for the injury. 38 A.J. 723. A superseding cause cannot be predicated on acts which do not affect the final result of negligence otherwise than to divert the effect of the negligence temporarily, or of circumstances which merely accelerate such result (citing authority).

" 'The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury.' " *Riggs v. Motor Lines, supra* (233 N.C. at p. 165, 63 S.E. 2d at p. 201).

Ordinarily, "the connection is not actually broken if the intervening event is one which might in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation." Shearman and Redfield on Negligence, Revised Ed., Vol. 1, Sec. 38, p. 101.

The allegations made by Cooper and Neal against the power company in the amended cross complaint disclose averments of negligence in substance as follows: (1) that the power company placed the gas pipe leading from the street to the Hayes home in shallow ground, dangerously near the surface of the street, only nine inches below the surface at the curb line, where it was struck by the motor grader; (2) that it installed the pipe under the Hayes house in an insecure manner, unanchored at the meter or along the joists and exposed and unsupported along the fall line from the meter to the feed line at the side of the house, so that the pipe under the house could be swayed, moved, and easily broken off at the meter; (3) that the Hayes house was bricked up tight underneath, and in making the installation the power company failed to provide a vent to allow leaking gas to escape or be channeled to open air, thereby creating a condition by which escaping gas when accumulated would seep through the floors and walls of the house and come into contact with fire, and thus cause an explosion; (4) that the power company knew that by regulation of the City of Wilmington its gas pipes were required to be kept at a safe depth—"in this case more than 20 inches below the surface of the street, . . .";  (5) that the power company had notice that Barnard Drive was to be graded and paved; that it should have foreseen that unless the pipes were lowered, the grading machine would likely strike the gas pipe in the street and disrupt the connection under the house and thereby permit gas to escape into the tight compartment under the house, which had no outside vent, and that an explosion was likely to occur in the way and manner in which it did actually occur, yet the power company took no step to remedy the dangerous installations made by it in the street and under the Hayes house.

These allegations, and others of similar import, when taken as true, as is the rule on motion to strike used as a demurrer, disclose negligence on the part of the power company which continued as an active, operative force down to the time of the explosion. Indeed, the allegation that the power company allowed the dangerous condition allegedly created by it to continue after notice that the grading was about to commence implies the existence of a new activating force negligently set in motion on the eve of the explosion. Also, it is noted that the element of reasonable foreseeability, the presence of which defeats operation of the doctrine of intervening negligence, is not left to inference or implication, as is usually the case in negligence pleading. *Pinnix v. Toomey,* 242 N.C. 358, 87 S.E. 2d 893. Here it is expressly alleged that the power company was charged with foreseeing the explosion.

It is manifest that the amended cross complaint does not disclose negligence on the part of Cooper and Neal which as a matter of law intervened and insulated the alleged negligence of the power company.

Nor does the amended cross complaint disclose negligence on the part of Cooper and Neal which fixes them as a matter of law with primary liability under application of the doctrine of primary and secondary liability. This doctrine as applied in tort cases is a branch of the law of indemnity. The doctrine rests on flexible principles of equity and natural justice. *Taylor v. Construction Co.,* 195 N.C. 30, 141 S.E. 492; *Clothing Store v. Ellis Stone,* 233 N.C. 126, 63 S.E. 2d 118; *Hunsucker v. Chair Co., supra* (237 N.C. 559). It has no all-embracing definition. However, in general terms, the rationale of the doctrine as deduced from the decisions may be stated as follows: Where two persons are jointly liable in respect to a tort, one being liable because he is the actual wrongdoer, and the other by reason of constructive or technical fault imposed by law, the latter, if blameless as between himself and his co-tortfeasor, ordinarily will be allowed to recover full indemnity over against the actual wrongdoer. Decision here does not require an extended discussion of the principles governing application of this remedy. See these decisions involving municipal street cases: *Dillon v. Raleigh,* 124 N.C. 184, 32 S.E. 548; *Gregg v. Wilmington,* 155 N.C. 18, 70 S.E. 1070; *Guthrie v. Durham,* 168 N.C. 573, 84 S.E. 859; *Conway v. Ice Co.,* 169 N.C. 577, 86 S.E. 524; *Ridge v. High Point,* 176 N.C. 421, 97 S.E. 369; *Bowman v. Greensboro,* 190 N.C. 611, 130 S.E. 502; *Ferguson v. Asheville,* 213 N.C. 569, 197 S.E. 146; *Broadhurst v. Blythe Bros. Co.,* 220 N.C. 464, 17 S.E. 2d 646. See these decisions involving agency and imputed liability cases: *Smith v. R. R.,* 151 N.C. 479, 66 S.E. 435; *Gadsden v. Crafts,* 175 N.C. 358, 95 S.E. 610; *Taylor v. Construction Co., supra* (195 N.C. 30); *Johnson v. Asheville,* 196 N.C. 550, 146 S.E. 229); *Cheshire v. Wright, ante,* 441, 90 S.E. 2d 687; *Newsome v. Surratt,* 237 N.C. 297, 74 S.E. 2d 732. See also these decisions involving defective property cases, defectively manufactured articles, and miscellaneous other fact situations: *Williams v. Stores Co., Inc.,* 209 N.C. 591, 184 S.E. 496; *Crowell v. Air Lines,* 240 N.C. 20, 81 S.E. 2d 178; *Davis v. Radford,* 233 N.C. 283, 63 S.E. 2d 822; *Lucas v. R. R.,* 165 N.C. 264, 80 S.E. 1076; *Bost v. Metcalfe,* 219 N.C. 607, 14 S.E. 2d 648; *Lovette v. Lloyd,* 236 N.C. 663, 73 S.E. 2d 886; *Hunsucker v. Chair Co., supra* (237 N.C. 559). See also 27 Am. Jur., Indemnity, Sections 18 and 19.

For the purpose of decision here it suffices to direct attention to an established rule of exclusion which prevents application of the principles of indemnity. The rule may be stated in gist as follows: Indemnity is not permitted where the indemnity seeker and the person against whom

indemnity is sought breached substantially equal duties owed to the injured person. Where this occurs, the violations produce no great difference in gravity of fault as between the joint tortfeasors, and both are on substantially the same plane of moral fault. Both parties being *in pari delicto,* neither will be held in law to be the principal wrongdoer, and therefore neither party will be required to relieve the other of the entire loss. It is a case for contribution rather than indemnity. *Taylor v. Construction Co., supra; Crowell v. Air Lines, supra; Ridge v. High Point, supra* (176 N.C. 421); *Power Co. v. Mfg. Co.,* 180 N.C. 597, 105 S.E. 394. See also *Williams v. Stores Co., Inc., supra* (209 N.C. 591).

Reference has already been made to the crucial phases of negligence alleged against the power company by Cooper and Neal in their amended cross complaint. The allegations, when taken as true, imply that the power company breached duties of the gravest sort owed by it to the members of the Hayes family, including the intestate. It is manifest that the duties allegedly breached by the power company were substantially equal to the duties owed by Cooper and Neal to the intestate. Necessarily, then, upon the record as presented, the power company is at least *in pari delicto* with Cooper and Neal. This defeats application of the principles of indemnity in favor of the power company.

The power company is privileged to plead and rely on the defense of intervening negligence and also that of indemnity. But since these defenses do not affirmatively appear upon the face of the Cooper-Neal pleading, they may not be brought in by way of speaking demurrer when the pleading is being tested only to determine whether it alleges a cause of action for contribution. *Trust Co. v. Wilson, supra* (182 N.C. 166).

Since the allegations set out in the cross complaint filed by the defendants Towles-Cline Construction Company and E. B. Towles Construction Company are substantially the same as those alleged in the amended pleading filed by Cooper and Neal, we conclude that each cross complaint alleges facts sufficient to constitute a cause of action for contribution against the power company. This necessarily works a reversal of the judgment below in favor of each appellant.

Reversed.

PARKER and BOBBITT, JJ., concur in result.

BARNHILL, C. J., dissenting: In cases such as *Hayes v. Wilmington,* 239 N.C. 238, 79 S.E. 2d 792, where the only exceptive assignment of error is directed to alleged error in the judgment in that the judgment is made to rest on an erroneous conclusion of law, it is well to read the

judgment before stating that a substantial and material part of the opinion in the case is *obiter dictum* as is here done.

In that case the presiding judge not only concluded that the facts alleged by Cooper disclose as a matter of law that his conduct constituted an intervening act of a responsible third party which was not foreseeable by the power company and which completely insulated the negligence, if any, of the power company, but he also, in effect, wrote an opinion setting forth that conclusion and cited pertinent opinions of this Court in support thereof. He wrote in part as follows:

". . . It is common knowledge that gas lines, such as are described by the defendant Cooper, are in common use in all of the large cities and towns. They are buried beneath the surface of the earth and are harmless if let alone. If the gas pipes in question in this case were buried too near the surface of the ground, that, in itself, could not make them an active source of danger. If the power companies were negligent at all, such negligence was passive and inactive; it was dormant, and in order to become a source of danger the intervention of an active negligent act became necessary. Following the reasoning laid down in WHARTON ON NEGLIGENCE, Section 136: Supposing that if it had not been for the intervention of a responsible third party, the defendant's (Power Companies') negligence would have produced no damage to the plaintiff, is the defendant liable to the plaintiff? The question must be answered in the negative; for the reason that causal connection between negligence and damage is broken by the interposition of independent human action. Say I am negligent on a particular subject matter. Another person, moving independently, comes in, and either negligently or maliciously so acts as to make my negligence injurious to a third person. If so, the person so intervening acts as a nonconductor, and insulates my negligence, so that I cannot be sued for the mischief which the person so intervening directly produces. He is the one who is liable to the person injured.

"To the same effect see:

> BUTNER *v.* SPEASE 217 NC 82
> SMITH *v.* SINK 211 NC 725
> HINNANT *v.* R. R. 202 NC 489
> GUTHRIE *v.* GOCKING 217 NC 476

"See also in particular: BAKER *v.* R. R. 205 NC 333.

"So that here we have this state of fact: The two power companies, or, rather the Tide Water Power Company, constructed a system of gas lines under the streets of the City of Wilmington, in order to supply gas to the citizens. Connecting pipes carried the gas from the Mains in the streets into the residences of citizens. These pipes, if left alone,

in their original condition, were not dangerous at all. There was no way that the Power Companies could foresee that such a disaster would occur as did occur on December 31, 1951.

"But somebody SLIPPED A COG, an intervening force, moving independently, comes in, one of the gas pipes is twisted out of position so that the connection in the residence of plaintiff's intestate is broken, gas escapes, is ignited, and two human beings are launched into eternity from a terrific explosion which followed.

"The court cannot see, under the facts as alleged in the pleadings of the defendant Cooper, that the two power companies can be held liable for what happened. . . ."

He thereupon entered judgment on the conclusion thus made, striking the names of the power companies as additional parties defendant. Cooper excepted and appealed, and in his brief on appeal he devotes approximately two pages of his brief to an attempt to refute the conclusion that his conduct insulated the negligence of the power company as alleged by him. That question is likewise discussed at some length in the brief of the appellees.

That is to say, both the appellant and the appellees recognized that the judgment entered could not be reversed unless the appellant convinced this Court that the trial judge erred in his conclusion on the question of insulated negligence.

Under these circumstances I am at a loss to conceive how this Court could either affirm or reverse the judgment under review in that case without considering and deciding whether the judge was correct in arriving at the conclusion on which he made his judgment rest. Yet it is now said that the discussion of that question in *Hayes v. Wilmington, supra,* is *obiter dictum* and wholly unnecessary to that decision. To this I cannot agree, and as I still hold to the opinion there expressed, I vote to affirm.

It is well to note that the procedure pursued on the original hearing and the dismissal of the additional defendants on the grounds that their negligence, if any, was insulated is in accord with recent decisions of this Court. *Potter v. Frosty Morn Meats, Inc.,* 242 N.C. 67; *Loving v. Whitton,* 241 N.C. 273, 84 S.E. 2d 919; *Troxler v. Motor Lines,* 240 N.C. 420, 82 S.E. 2d 342, and cases cited; *McLaney v. Motor Freight, Inc.,* 236 N.C. 714, 74 S.E. 2d 36.

Since the foregoing was written, the majority opinion has been substantially revised. Even so, I shall permit my dissent to remain as it is with the following addition to meet the change of position in the majority opinon.

When Cooper failed to file a petition for rehearing, the original opinion became the law of the case. To avoid the effect of his failure

so to do and to justify the novel procedure adopted to grant a rehearing, the majority now undertake to treat the original notice and motion to strike as a demurrer *ore tenus.* Judge Grady labeled his judgment "JUDGMENT ON MOTION OF (power companies) AND ON DEMURRER ORE TENUS TO FURTHER ANSWER AND CROSS-BILL OF S. E. COOPER." The motion of the power companies was a motion to strike for the reason the cross action does not allege a cause of action which may be pleaded under the terms of G.S. 1-240. There is no notation of a demurrer *ore tenus* in the record or any reference thereto except as noted above.

An original party defendant may not have a third party made an additional defendant for the purpose of seeking contribution until or unless he alleges a cross action which the plaintiff might have pleaded against such third party if he had elected so to do. Thus we must look to the complaint as well as to the cross action alleged to determine whether or not the original defendant has alleged a cross complaint which entitles him to have the third party made a party defendant. That the cross complaint does not constitute a cause of action which might have been pleaded by the party plaintiff is the one ground which entitles the third party to have his name stricken. If the cross action does allege such a cause of action, the motion to strike should be denied. If it does not allege such a cause of action, the name of the third party should be stricken as a matter of right.

The two pleadings—a motion to strike and a demurrer *ore tenus*—are essentially different in purpose and effect. When a motion to strike is allowed, the movant goes out of court and is no longer a party to the action. On the other hand, when a demurrer *ore tenus* for failure to state a cause of action is sustained, the pleader may amend his pleading so as to allege sufficient facts to constitute a good cause of action, and the demurrant must then answer. On the original appeal all the parties treated the motion just as it was—a motion to strike. The majority now seek to make it a demurrer *ore tenus* so as to justify the novel procedure adopted to reverse the original opinion without saying so. If a majority of the Court has determined that we were in error in our conclusion in the original opinion, we should say so and be done with it. We are human, and, as others, we make mistakes, and when we conclude that we have made a mistake, we should not hesitate to admit the fact without attempting to explain it away without admission of error. It does not take nineteen pages to admit an error in one opinion.

It is stated that what was said in the original opinion about insulated negligence and primary and secondary liability was *obiter dictum.* Oddly enough, the majority opinion now devotes six to eight times as

much space to a discussion of these two doctrines as was used in the original opinion.

It might not be amiss to make further comment on other statements contained in the majority opinion. However, if the Court is to adopt this unusual and indirect method of granting a rehearing of the former decision, any discussion of those questions would serve no useful purpose.

I dissent for the reasons that:

(1) I am still of the opinion that the admitted conduct of Cooper insulated the negligence, if any, of the power companies. *Gas Co. v. Montgomery Ward & Co.*, 231 N.C. 270, 56 S.E. 2d 689, is directly in point except that the facts here alleged by Cooper and plaintiff make out a stronger case of insulated negligence than does the evidence in the *Gas Co. case.*

(2) The majority attempt to treat the motion to strike as a demurrer; and

(3) When Cooper failed to petition for a rehearing, the original opinion became the law of the case, and I cannot concur in the novel method now adopted to avoid the effect of that opinion. It will surely rise up to plague us in the future.